UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Marvin Williams,<br><br>  Plaintiff,<br><br>  v.<br><br>Illinois Department of Transportation,<br><br>  Defendant. | Case No. 3:19-cv-50343<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marvin Williams brings this action under Title VII of the Civil Rights Act of 1964 against the Illinois Department of Transportation (IDOT), alleging that he was discriminated against because of his race and in retaliation for engaging in activity protected under Title VII. Before the Court is IDOT's motion for summary judgment. For the following reasons, the motion is granted, and this action is dismissed with prejudice.

**I. Background**

**A. Factual Background**

At all relevant times, Marvin Williams was employed by IDOT as a Highway Maintainer, with additional temporary duties as a silk screen operator. Def.'s Statement of Facts (DSOF) ¶¶ 3, 23. Williams generally reported to IDOT's Sign Shop in Dixon, Illinois, but was sometimes required to go elsewhere during the

1

winter to plow snow. *Id.* ¶¶ 25-26. Under a collective bargaining agreement (CBA) negotiated by the Teamsters Union, of which Williams was a member, IDOT was not required to provide transportation to Highway Maintainers when they had to report elsewhere. *Id.* ¶¶ 10-11.

In late 2018, Williams and other Highway Maintainers circulated a document saying they no longer wanted to drive their own cars to report elsewhere because of perceived liability issues. DSOF ¶ 32; Def.'s Resp. Pl.'s Statement of Facts (DRPSOF) ¶ 80. Instead, they wanted IDOT to provide them with cars. DSOF ¶ 32. After being informed that IDOT would not do so, including by a memorandum of January 10, 2019, *id.* ¶¶ 35-41, Williams and two other Highway Maintainers called off from work on January 12, 2019. *Id.* ¶ 42. In response, they were all placed on "proof status," which required them to document that they were in fact sick, because it was suspected that they were absent to protest the memorandum. *Id.* ¶¶ 42-44. On January 15, Williams and the same two Highway Maintainers were reprimanded for disobeying the memorandum after they took IDOT cars to report elsewhere. *Id.* ¶¶ 48-50.

On January 31, 2019, Williams and other Highway Maintainers were told to report to Oregon, Illinois, to plow. *Id.* ¶ 53. Because he had no car with him, Williams decided to walk the approximately 20 miles to Oregon. *Id.* ¶¶ 52-57. He was picked up somewhere along the way and plowed for a few hours. *Id.* ¶¶ 57-58. The next day, again told to report to Oregon and again without his own car, Williams refused his manager's suggestion that he ride with another Highway

2

Maintainer and again began to walk to Oregon. *Id.* ¶¶ 59-62. Along the way, Williams says that he fell and injured himself. DRPSOF ¶ 92. He was eventually picked up and driven the rest of the way. DSOF ¶ 62. Williams's duties were thereafter restricted because of injury, *id.* ¶¶ 64-65, and during a subsequent absence from work, Sign Shop management found that he was substantially behind in his role as a silk screen operator, *id.* ¶ 67, a position from which he was later removed. *Id.* ¶ 68.

**B. Procedural Background**

On February 19, 2019, Williams filed a charge with the Equal Employment Opportunity Commission (EEOC); in it, he made these allegations:

> Since January 2018, I have been subjected to different terms and conditions of employment in that I have been disciplined because I do not have a vehicle at work and or have used state vehicles to accomplish my job whereas my Caucasian co-workers have not. My Supervisors, Kevin Marchek and Trisha Thompson have both have [sic] treated me differently than my Caucasian co-workers in that they fail to call me for overtime and refuse to allow me to use state vehicles to accomplish my job. When I complained of the disparate treatment they moved to discipline me.
>
> I have been discriminated against by IDOT because of my race, African American and Color, Black and retaliated against when I complained to management in violation of state and federal statutes.

*Id.* ¶ 74.

The EEOC issued Williams a right to sue letter on September 24, 2019, and this action commenced on December 19, 2019. *Id.* ¶ 75.

**II. Legal Standard**

**A. Summary Judgment**

A party is entitled to summary judgment when it demonstrates that there is no genuine dispute as to any material fact and judgment is proper as a matter of law. Fed R. Civ. P. 56. A fact is material when it could affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine when it could lead a reasonable jury to return a verdict in favor of the non-moving party. *Id.* The Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences—and only reasonable inferences, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins.*, 994 F.3d 869, 876 (7th Cir. 2021)—in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Smith v. Crounse Corp.*, 72 F.4th 799, 804 (7th Cir. 2023).

"It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Packer v. Trustees of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015). "A district court may reasonably expect a party opposing summary judgment to lay out its case thoroughly and include in its memorandum cites to the specific parts of the record confirming that there are genuine disputes of material fact which require the case to be tried." *Id.* at 853. Any arguments not made or so supported are forfeited. *See id.* at 849.

**B. Local Rule 56.1**

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). Local Rule 56.1 requires a

4

party seeking summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to the record supporting those facts. *See* LR 56.1(d). The opposing party must admit or controvert each fact in response; its response "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). The response also "may not assert legal arguments except to make an objection." *Id.*

"District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Similarly, facts not otherwise included in the statement of facts may be ignored. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005).

## III. Analysis

### A. Title VII

#### 1. In general

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to (1) "discriminate" against an employee with respect to his "compensation, terms, conditions, or privileges of employment" "because of" his race, 42 U.S.C. § 2000e-2(a)(1), or to (2) "discriminate" against an employee "because" he (1) opposed an employment practice made unlawful by Title VII, (2) "made a charge" or (3)

5

"participated in any manner" in an employment-discrimination "investigation, proceeding, or hearing."[1] 42 U.S.C. § 2000e-3(a). The statute provides a civil cause of action for the employee "claiming to be aggrieved" against the employer,[2] but only after the employee has met certain pre-suit requirements. 42 U.S.C. § 2000e-5(f)(1).

### 2. Discrimination

Discrimination under Title VII includes the treatment of "some people less favorably than others" because of their race or in retaliation for their participation in a § 2000e-3(a) protected activity. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

Retaliatory discrimination can include anything that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (cleaned up).

Status-based discrimination, however, must pertain to the terms and conditions of employment and be a "materially adverse change . . . more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (cleaned up). An actionable adverse action "in

---

[1] As a shorthand, this is commonly referred to as "protected activity." *See, e.g.*, *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 61 (2006).
[2] Williams has sued IDOT, a state agency, which is tantamount to a suit against the state of Illinois, *see Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005); such a suit would ordinarily be barred by the Eleventh Amendment, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985), but it may proceed because Congress has abrogated state sovereign immunity with respect to Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 457 (1976).

most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998).

The Seventh Circuit has identified three classes of materially adverse changes: (1) diminishment of the benefits of employment, financial or otherwise, including, in the "limiting case," termination; (2) changes to employment, by a "nominally lateral transfer" or otherwise, that reduce an employee's career prospects (and hence the future financial benefits of employment) by "preventing him from using the skills in which he is trained and experienced"; and (3) changes to the conditions of work that create an objective hardship by subjecting an employee to a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002).

**3. Causation**

In Title VII cases, the "sole question that matters" is whether an employee's status or participation in a protected activity "caused" his discriminatory treatment. *Ortiz v. Werner Enters, Inc.*, 834 F.3d 760, 764, 765 (7th Cir. 2016). This involves two different standards of causation, depending on the type of discrimination alleged. A claim involving status-based discrimination requires only that the protected characteristic be a "motivating factor" in the unlawful employment practice, even if "other factors also motivated" it. 42 U.S.C. § 2000e-2(m); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342-43 (2013). A claim for retaliation, however, requires proof under the "traditional principles of but-for causation" that

7

the employer's adverse action "would not have occurred" if the employee had not engaged in the protected activity. *Nassar*, 570 U.S. at 343, 362.[3]

### 4. Title VII claims at summary judgment

Thus, for a Title VII claim to survive summary judgment, a plaintiff must show that a reasonable jury could conclude—based on direct or circumstantial evidence—that discrimination was caused (with a stronger or weaker showing required depending on the type of claim) by the plaintiff's status or participation in an activity protected by Title VII.

The Seventh Circuit has recognized three "broad types" of circumstantial evidence that can support an inference of intentional discrimination: (1) suspicious timing, or ambiguous or suggestive comments or conduct; (2) systematically better treatment of people similarly situated to the plaintiff other than with respect to the protected characteristic; and (3) dishonest justifications for disparate treatment that are merely pretextual. *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Although it is not required, a plaintiff may also "choose to enlist the burden-shifting framework of *McDonnell Douglas*," *Joll*, 953 F.3d at 929, to show unlawful discrimination at summary judgment. *Id.*

---

[3] In contrast, federal employees need not meet but-for causation for retaliation claims. *Huff v. Buttigieg*, 42 F.4th 638, 645 (7th Cir. 2022).

Under this approach, to establish a prima facie case of status-based discrimination a plaintiff must show that (1) he was a member of a protected class; (2) he met the employer's legitimate job expectations; (3) he suffered a materially adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Dunlevy v. Langfelder,* 52 F.4th 349, 353 (7th Cir. 2022). If he can, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse employment action; if the defendant can do so, the burden shifts again to the plaintiff to show that the justification was pretextual. *Id.*

To establish a prima facie retaliation claim, a plaintiff must show that (1) he engaged in a protected activity; (2) he suffered an adverse action by his employer; and (3) there is a causal link between his engagement in the protected activity and the adverse action, *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1118 (7th Cir. 2022), with the same burden-shifting to follow.

**B. Prerequisites to Title VII actions**

To validly commence a Title VII action in federal court, a plaintiff must both (1) timely file a charge of discrimination with the EEOC—after which the EEOC will issue a right to sue letter, *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)—and (2) timely file the suit in federal court. 42 U.S.C. § 2000e-5(e), -5(f)(1).

9

The Title VII action may only involve those claims that were included in the EEOC charge or that are "like or reasonably related to the allegations of the charge and reasonably growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). This is intended to give the EEOC the opportunity to settle the dispute with the employer, and to give the employer notice as to the conduct being challenged. *Id.* At a minimum, the charge and complaint must describe the same conduct and implicate the same individuals, not merely assert the same kind of discrimination. *Id.* at 1004-05.

**C. Williams's claims**[4]

Williams brings two claims: one for discrimination because of his race, and the other for retaliatory discrimination because of his protected activity. He relies on the *McDonnell Douglas* framework, Pl.'s Resp. Memo. (PRM) at 2-3, which the Court likewise adopts.[5] Both fail.

**1. Racial discrimination**

First, the Court addresses his racial discrimination claim. The parties do not dispute that Williams is a member of a protected class but contest the other three

---

[4] The Court confines its analysis to the arguments Williams raises in his memorandum opposing summary judgment. All others are forfeit. *See Packer*, 800 F.3d at 849.

[5] Of course, the Court remains cognizant that the fundamental inquiry is whether the evidence as a whole could lead a reasonable jury to find that the protected characteristic or activity caused the discriminatory treatment. *Ortiz*, 834 F.3d at 764 (7th Cir. 2016). *McDonnell Douglas* or no, Williams's claims fail.

10

elements of a prima facie showing of discrimination under *McDonnell Douglas*. Williams raises three instances of alleged discrimination. PRM at 1, 4-5. All fail. [6]

*i. IDOT vehicles*

Williams first argues that he was racially discriminated against when he was "disallowed from utilizing a state vehicle while other, white coworkers were allowed to continue utilizing state vehicles to complete their work tasks," which, in one instance, forced him to "walk in sub-zero temperatures just to report to his worksite." PRM at 1, 4.

To support his claim that the IDOT policy against the use of state cars was applied in a discriminatory way, Williams cites only his complaint, which by itself is enough to doom it for lack of evidence. Presumably, such a claim ought to rely on the memorandum of January 10, 2019, that announced that IDOT would not provide a state car when Highway Maintainers were required to report elsewhere, DSOF ¶ 32, but two other white employees were allowed to continue using state cars. DRPSOF ¶ 95.[7]

---

[6] Williams appears to proceed on the assumption that he can prevail by showing each element of the *McDonnell Douglas* test in isolation—i.e., that if he can show that he *ever* suffered an adverse employment action, *ever* met legitimate expectations, and was *ever* treated differently compared to those outside his class, he has made out a prima facie claim of employment discrimination. But he must show each element—to raise the inference that an adverse employment action was taken because of his protected characteristic or activity—with respect to *each* discrete act of discrimination alleged to make out such claim.
[7] Again, "[i]t is not [the] task . . . of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir. 1997).

11

Even had Williams argued this—which he didn't—this theory still falls short. In the first place, he fails to demonstrate that this policy amounted to an adverse employment action. He concedes that he and the other Highway Maintainers were members of the Teamsters Union, and thus bound by a CBA that states unqualifiedly that when employees are required to travel away from their regular base of operations, "[IDOT] will not be responsible for providing transportation." DSOF ¶¶ 10-11.[8] Because neither he nor the other Highway Maintainers were entitled to the use of IDOT cars, the withdrawal of that privilege as to all or most Highway Maintainers is not a materially adverse employment action with respect to Williams. Even had it been directed against him, the loss of a merely occasional perquisite, *see id.* ¶¶ 26, 30, to which he was not contractually entitled, and which didn't affect his pay, conditions of employment, or prospects is still no more than a "mere inconvenience," *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017); *see also Bohse v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 03 C 3879, 2003 WL 22902415, at *2 (N.D. Ill. Dec. 9, 2003).

Even if the policy amounted to a materially adverse employment action, it is undisputed that it applied to all Highway Maintainers, DSOF ¶ 39, a racially heterogeneous group, which makes it implausible to infer that race played any role in the decision. *See, e.g.*, DRPSOF ¶¶ 84, 86. And even had Williams alone been disallowed from using IDOT cars, he makes no effort to demonstrate that this was because of his race or to propose a comparator. Any potentially relevant groups in

---

[8] Employees are entitled, however, to reimbursement for travel. DSOF ¶¶ 10-11.

12

the record—whose relevance goes unargued in his memorandum—are described in insufficient detail to allow for any meaningful comparison.[9] "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (cleaned up). In sum, Williams has failed to show a materially adverse employment action or propose a meaningful comparator, and his claim related to the IDOT policy fails.

And inasmuch as he maintains that being forced to "walk in sub-zero temperatures just to report to his worksite" is a distinct adverse employment action, rather than a description of his injury because of the IDOT policy, it too fails. Williams seems to equivocate as to the adverse employment action involved here: whether it was being forced to walk "25 miles in the middle of winter . . . to get from one work station to another" or management's order that "no co-worker pick [him] up," DRPSOF ¶ 92; PRM at 6-7, neither qualifies. Williams was free to get himself to his next assignment however he chose—that he chose to walk, especially when he had been told by his manager that he could go with one of his coworkers, DSOF ¶¶ 60-61, involves no action on IDOT's part; nor does its failure to save him from his

---

[9] Beyond the possible inference—which Williams leaves unstated—that these other employees who continued to use IDOT cars in their work were both Highway Maintainers and managed by Marchek, Williams says nothing of their duties, which precludes any inference helpful to his claim. *See* DRPSOF ¶ 95.

13

own actions after he set out. Even if these were employment actions, Williams offers nothing to aid the inference that they were taken because of race, announcing only that IDOT "cannot offer any evidence that they treated Caucasian coworkers the same." PRM at 7. Of course, to disprove that is his duty; because he has failed to show any evidence of discrimination, this claim fails.

### ii. Proof status

Next, Williams argues that he was discriminated against by being "disciplined more severely" than white employees for the same infraction when he was put on "proof status for calling off of work . . . hours before" the white employees were also put on proof status. PRM at 5. Because his claim is that he was disciplined more harshly for some failing because of his race, the second and fourth elements—meeting legitimate expectations and the production of a comparator—merge. *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011).

This theory fails in the first place because proof status—which merely requires that an employee substantiate the illness for which they are taking off from work, DSOF ¶ 43—is not an adverse employment action. *See Fuller v. McDonough*, No. 22-2478, 2023 U.S. App. LEXIS 27638, at *6-8 (7th Cir. Oct. 18, 2023) (oral or written reprimands are not adverse action). Even if proof status is "putatively disciplinary," Williams produces no evidence that it "resulted in tangible job consequences," which is required to be actionable under Title VII. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647-48 (7th Cir. 2005).

And even if it were an adverse employment action, Williams's argument that he was discriminated against because two other Highway Maintainers who "performed the same job duties, travelled similar routes, signed identical certifications not to drive their vehicles, were supervised by the same people, and called off work on January 12, 2019" were put on proof status hours after he was fails. PRM at 5. First, the only evidence he produces of any such lag is Thompson's deposition testimony that she didn't know whether Williams had been disciplined first.[10] DRPSOF ¶ 87. "It is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001). Even if he were disciplined first, he fails to show that this amounts to materially more favorable treatment, because all were eventually punished in the same manner, and fails to show any evidence that this gap—if it existed—was because of his race.

### iii. Silk screen position

Finally, Williams argues that he was discriminated against by being "taken off of a temporary silk screen position that he was qualified for" only for it to be given to "someone less-qualified," which "constructively forced [him] to go on non-occupational disability." PRM at 4.[11]

---

[10] The citations to Williams's deposition transcript contain no such evidence. *See* DRPSOF ¶¶ 86, 88.

[11] Williams does not factually, logically, or legally connect why his removal from the silk screen position caused him to "go on non-occupational disability.") In fact, this assertion doesn't make much sense.

First, IDOT urges that this claim was not administratively exhausted. Def.'s Memo. (DM) at 3-4. But Williams's removal from the silk screen position came after he filed the EEOC charge, and he alleges that he was removed, in part, in retaliation for having filed the charge. PRM at 7. Thus, the general exception for retaliation claims can save this discrimination claim related to his removal as well. *See Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 857 n.11 (7th Cir. 2019).

Secondly, IDOT argues that because Williams's complaint makes no mention of the silk screen operator position, states explicitly that it is founded on discriminatory conduct "[f]rom January 2018 to January 2019" (with his removal after then), and declined numerous opportunities to amend his complaint, he may not now "amend his complaint through arguments in his brief in opposition to a motion for summary judgment" to assert this claim of racial discrimination. Def.'s Reply (DR) at 4 (quoting *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)). The Seventh Circuit has recently clarified that while district courts "retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend," it is "rarely . . . appropriate" to do so, with the decision governed by the usual standard for giving leave to amend, with particular attention given to the potential for prejudice against the other party. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488, 490 (7th Cir. 2023). From very early in the case, however, Williams raised the issue of the silk screen position (e.g., his interrogatory responses of October 23, 2020, Dkt. 79, Ex. 30 at 3), and IDOT

16

questioned him extensively about it in his deposition, *see* Dkt. 79, Ex. 1 *passim*, so there is no prejudice to IDOT in considering it.

On the merits, however, this claim fails. Even if it amounted to an adverse employment action—which Williams does not substantiate beyond his assertion that it "forced [him] to go on non-occupational disability," PRM at 4, the significance of which to his argument is unclear—he produces no evidence to raise the plausible inference that he was removed because of his race. IDOT says that he was removed because he had fallen behind in his duties as a silk screen operator, a fact that Williams does not contest. PRM at 5, DR at 7. His only response is that because he worked as both a Highway Maintainer and a silk screen operator, he was not able to devote his entire time to either position, [12] thus "making it easier for [IDOT] to bring forth this pretextual excuse for a failure to meet legitimate expectations." PRM at 5. But without any relevant points of comparison—the productivity of other Highway Maintainers who also held both jobs simultaneously, how those outside of Williams's class were disciplined for similar failings, or the like—this argument cannot raise the inference that Williams was discriminated against or that IDOT's reasons are pretextual.

**2. Retaliation**

Next, the Court addresses his retaliation claim. He appears to ground this claim in three instances of discrimination: (1) recission of his ability to "work with

---

[12] And the undisputed record actually shows that while it ought only to have occupied two days of the week, Williams was substantially behind while doing it full-time. DSOF ¶ 67.

17

the same restrictions" that he had been; (2) denial of workers' compensation and placement on non-occupational disability; and (3) removal from the silk screen position. PRM at 5-6.

Regardless of whether these amount to adverse employment actions—and Williams' failure to cite any evidence beyond his complaint and grievances to IDOT that baldly lay out such complaints makes it difficult to say, *id.*—his claim fails because he shows no causal link between them and his protected activity. He relies solely on the assertion that these purported employment actions came "right on the heels of the EEOC complaint." PRM at 6. But "[s]uspicious timing is rarely enough to create a triable issue." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021). A plaintiff must first demonstrate that those responsible for the adverse employment action were aware of the protected activity before it can plausibly raise the inference of retaliation. *Id.* Williams identifies no such evidence, and his claim therefore fails.

## IV. Conclusion

Because no reasonable jury could find for Williams on any of his claims, IDOT's motion for summary judgment is granted. This case is dismissed with prejudice.

Date: October 25, 2023

_____
Honorable Iain D. Johnston
United States District Judge